1
2
3
4
5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6
7

EASTERDAY RANCHES, INC., a
Washington corporation,

8

9                    Plaintiff,

10            v.

11   U.S. DEPARTMENT OF
     AGRICULTURE; TOM VILSACK,
12   Secretary of the U.S. Department of
     Agriculture; AGRICULTURAL
13   MARKETING SERVICE, an
     agency of the U.S. Department of
14   Agriculture; and RAYNE PEGG,
     Administrator of the Agricultural
15   Marketing Service,

16                    Defendants.

NO.  CV-08-5067-RHW

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

17        Before the Court are the parties' cross-motions for summary judgment. (Ct.

18   Rec. 34 & 38).  Oral argument on this matter was heard February 2, 2010. Plaintiff

19   was represented by Michael B. Gillett; Defendants were represented by Adam D.

20   Kirschner. Plaintiff challenges a Final Rule promulgated by Defendants that went

21   into effect on September 30, 2008. The rule implements 7 U.S.C. § 1638a (a

22   provision of the 2008 Farm Bill), which requires notice to consumers of the

23   country of origin of certain "covered commodities" (including beef products, here

24   at issue).  Plaintiff maintains the statute and the USDA's subsequent rule conflict

25   with an earlier regulation promulgated by the Treasury Department.

26        On September 25, 2008, this Court denied Plaintiff's motion for a temporary

27   restraining order, concluding that Plaintiff failed to show a likelihood of success on

28   the merits. (Ct. Rec. 8).  Plaintiff departs from its primary argument during those

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**\* 1

1  proceedings and now asserts the USDA exceeded its authority by effectively
2  repealing the earlier Treasury regulations.  Plaintiff urges the court to harmonize
3  the two regulations by creating an exception to the Farm Bill not found in the
4  statutory language.  Defendants claim they are obliged to implement Congress's
5  expressed directive.  For the reasons stated below, the Court grants summary
6  judgment in favor of Defendants and denies Plaintiff's motion.

7                               **STANDARD OF REVIEW**

8           Though styled as summary judgment motions, the parties have essentially
9  filed dueling briefs on Plaintiff's requested relief under the Administrative
10  Procedures Act (APA).  The APA provides that a reviewing court shall "hold
11  unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse
12  of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  The
13  scope of review under this standard is narrow and a court is not to substitute its
14  judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*
15  *Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The Supreme Court has set forth several
16  considerations when determining whether an agency has acted arbitrarily,
17  including:

18           [whether] the agency has relied on factors which Congress has not
19           intended it to consider, entirely failed to consider an important
             aspect of the problem, offered an explanation for its decision that
20           runs counter to the evidence before the agency, or is so implausible
             that it could not be ascribed to a difference in view or the product of
21           agency expertise.

22  *Id.* at 43.  What has resulted is a highly deferential standard and one that presumes
23  an agency acted with validity. *Indep. Acceptance Co. v. California*, 204 F.3d 1247,
24  1251 (9th Cir. 2000).  The court is required to affirm an administrative decision so
25  long the agency presents a rational basis for its decision, even if the court might
26  otherwise disagree. *Id.*

27
28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**\* 2

**DISCUSSION**

### A.    Background

Prior to the enactment of the 2008 Farm Bill, country of origin labeling of products (hereinafter "COOL") was regulated by preexisting Treasury Department rules.[1]  At issue here, under Treasury's COOL scheme live cattle born and/or raised in Canada or Mexico, but imported to the U.S. for slaughter, were nevertheless considered a product exclusively of the United States because they had undergone a shift in tariff classification. 19 C.F.R. § 102.11(a)(3); *see also* 19 C.F.R. § 102.20 (designating slaughter of live cattle a qualifying tariff shift).  This has been dubbed the "NAFTA marking rule."  But pursuant to the 2008 Farm Bill, a United States COOL designation is permitted only when the beef is "*exclusively* born, raised, and slaughtered in the United States. 7 U.S.C. § 1638a(a)(2)(A) (emphasis added).[2] The USDA's rule mirrors the Congressional language nearly verbatim. *C.f.* 7 C.F.R. 65.260(a) ("United States country of origin means in the case of Beef . . . From animals exclusively born, raised, and slaughtered in the United States[.]").

This distinction presumably is important to Plaintiff because, due to its proximity to the border, it regularly imports cattle from Canada for processing at its Pasco, Washington slaughterhouse.  Under the NAFTA rule, retailers of Plaintiff's beef could represent to consumers that such were "Products of the United States," despite the fact that the animals originated outside this country. However, under the USDA's COOL provisions, these same products are now

---

[1]These were promulgated under the Tariff Act of 1930 (19 U.S.C. § 1202 *et seq.*).

[2]The statute contains two other circumstances where a United States designation is appropriate. *See* 7 U.S.C. §§ 1638a(a)(2)(B)-(C).  Neither contains an exception for products containing raw materials imported from NAFTA countries.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**\* 3

required to be labeled "Products of the United States and Canada." *See* 7 C.F.R. § 65.300(e)(1) (guidelines for labeling beef with multiple countries of origin).

**B.    *Implicit Repeal of the NAFTA Marking Rule***

Plaintiff argues that the only way the USDA's COOL provisions can be valid as to NAFTA imports is if the agency or Congress implicitly repealed the Treasury's NAFTA marking rule.[3]  It is well-settled that executive agencies lack the authority to repeal a statute. *United States v. Shumway*, 199 F.3d 1093, 1107 (9th Cir. 1999).  Plaintiff contends that Congress did not intend to repeal the pre-existing Treasury rules, and therefore that this Court must give effect to both schemes by creating an exception to the USDA's regulations based upon the NAFTA rule.

The Court agrees with the first premise of Plaintiff's argument.  Repeal by implication is disfavored and occurs only where: (1) the later-enacted statute covers "the whole subject matter" of the earlier one, and (2) where provisions in the two acts statutes are in "irreconcilable conflict." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976).  These circumstances are not found here.  The scope of the Farm Bill's COOL provisions is limited to a few "covered commodities," while the NAFTA marking rule extends to include  non-agricultural goods not affected by the Farm Bill.  Neither are the schemes in irreconcilable conflict.  Only when there is a "positive repugnancy" between them or they are incapable of coexistence will the earlier statute be found to have been implicitly repealed. *Id.*  Because the statutes at issue here *are* capable of coexistence, as discussed below, the Court finds that the Farm Bill did not repeal Treasury's

---

[3]The second method of statutory repeal, express repeal, is not supported here as the Farm Bill's language makes no explicit mention of the Treasury's rules. *See, e.g., Moyle v. Dir., Office of Workers' Comp. Programs*, 147 F.3d 1116, 1119, n. 4 (9th Cir. 1998).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**\* 4

1  NAFTA marking rule.

2  ***C.    Coexistence of Statutes***

3        The case law establishes that when courts construe agency regulations

4  alleged to be in conflict, there is a presumption in favor of finding harmony

5  between two regulations dealing with similar subjects. *Kearfott Guidance &*

6  *Navigation Corp. v. Rumsfeld*, 320 F.3d 1396, 1377 (Fed. Cir. 2003); *see also*

7  *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 862 (9th Cir. 1996)

8  ("Congress must be presumed to have known of its former legislation and to have

9  passed new laws in view of the provisions of the legislation already enacted.").

10  Plaintiff has not successfully countered this presumption.  Although the Treasury

11  rules provide that goods produced from Canadian or Mexican imports technically

12  "originate" in the United States, that agency does not require retailers to affix any

13  COOL label to the product at all. 19 C.F.R. § 134.35(b) ("A good of a NAFTA

14  country which is to be processed in the United States in a manner that would result

15  in the good becoming a good of the United States under the NAFTA Marking

16  Rules is excepted from marking.").  As the Government pointed out during oral

17  argument, the NAFTA Marking Rules apply in a customs setting, for purposes of

18  tariff designation, while the Farm Bill provisions explicitly apply to retail products.

19  The statutory language in the 2008 Farm Bill merely provides for the labeling of a

20  particular set of commodities that were previously free from any COOL

21  requirements.  The labeling of these products furthers the objective precipitating

22  the Farm Bill's COOL provisions, notably of "provid[ing] consumers with greater

23  information about the food they buy." S. Rep. No. 107-117, at 93-94 (2001).  The

24  two statutes are already in harmony.

25        Nevertheless, Plaintiff argues that the USDA should have reconciled the

26  laws by creating a "small exception" to its own COOL provisions that would

27  permit beef imported from NAFTA countries to carry an exclusive United States

28  designation. (Ct. Rec. 36, at 12-13).  In support of this proposition, Plaintiff cites

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**\* 5

1    *Lujan-Armendariz v. I.N.S.*, 222 F.3d 728 (9th Cir. 2000), a case in which an

2    "earlier statute [was] preserved by reading a minor exception into the later statute."

3    *Id*. at 745.  However, the later-enacted statute at issue in *Lujan-Armendariz* was

4    broad and would have served to abrogate an exception for a particular

5    circumstance Congress had addressed in earlier legislation.  The court was not

6    willing to allow a generic statute to negate a specific policy and carved an

7    exception to the new law not found in the original statutory language. *Id*. at 735.

8          The present situation is opposite to that in *Lujan-Armendariz*.  Here, the

9    later-enacted statute (the Farm Bill) concerns the labeling and designation of select

10   agricultural products, while, as Plaintiff admits, the NAFTA marking rule extends

11   more broadly to "non-agricultural goods not affected" by the USDA COOL

12   regulations. (Ct. Rec. 36, at 10).  Plaintiff counters by citing to the Federal Register

13   in an attempt to show that the NAFTA rule of origin too is "highly specific." (Ct.

14   Rec. 54, at 13).  While it is indeed procedurally detailed, the NAFTA rule is not

15   specific in subject-matter.  The Court has been able to find no subsequent case law

16   citing *Lujan-Armendariz* for the proposition that exceptions based upon older

17   legislation should be read into later-enacted statutes in order to harmonize the two

18   laws.  The lack of such authority comports with the fundamental principle that a

19   statute containing a specialized scheme—such as the Farm Bill's instructions for

20   the labeling of beef—should not be nullified by one of more generality, regardless

21   of their temporal relationship. *California ex rel. Sa+cramento Metro. Air Quality*

22   *Mgmt. Dist. v. United States*, 215 F.3d 1005, 1013 (9th Cir. 2000).

23         Further, an exception based upon the NAFTA rule would run contrary to the

24   explicit language of the Farm Bill.  There can be no question that the USDA must

25   give full effect to and enforce the statutory directive. *Chevron v. Natural Resources*

26   *Def. Council*, 467 U.S. 837, 842-43 (1984).  This is precisely what the agency did

27   by amending its regulations to define "United States country of origin" in the case

28   of beef as coming "from animals exclusively born, raised, and slaughtered in the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**\* 6

United States," language that precisely parallels that of Congress.[4] 7 C.F.R. §
65.260(a)(1).  As Plaintiff correctly notes, an "agency action that violates a
statutory mandate is an action 'not in accordance with the law' under the
Administrative Procedure Act." (Ct. Rec. 51, at 4) (citation omitted).  Had the
USDA deviated from the expressed statutory language and included the exception
Plaintiff seeks, it would likely have been in violation of the APA.  The USDA's
action implementing regulations mirroring the language of the Farm Bill cannot
therefore be found to be arbitrary or capricious.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (Ct. Rec. 34) is **DENIED**.

2.  Defendants' Motion for Summary Judgment (Ct. Rec. 38) is
**GRANTED**.

3.  The District Court Executive is directed to enter judgment in favor of
Defendants.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this
Order, furnish copies to counsel, and **close the file**.

**DATED** this 5th day of February, 2010.


*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

Q:\CIVIL\2008\Easterday\SJ.ord.wpd

---

[4]The amended definition also includes the two other circumstances specified
in the statute where an exclusive U.S. designation is appropriate.  7 C.F.R. §§
65.260(a)(2)-(3); *see supra* note 2.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**\* 7